**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
McALLEN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | 7:18-MJ-01507-1 |
| | § | |
| MEISY ANGELICA ZAMORA | § | |

**DEFENDANT'S MOTION TO REVOKE OR AMEND DETENTION ORDER
PURSUANT TO 18 U.S.C. § 3145(B)**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, MEISY ANGELICA ZAMORA, Defendant, by and through her undersigned counsel Christopher Sully, and respectfully moves, pursuant to 18 U.S.C. § 3145(b), the district court having original jurisdiction over the alleged offense in this case, to revoke or amend the detention order issued by the magistrate judge, the Hon. Juan F. Alanis, against Mrs. Zamora, and instead order Mrs. Zamora released pending trial on reasonable conditions.

There is no presumption in favor of detention in this case; therefore Mrs. Zamora should be released pending trial on reasonable conditions, unless the government can prove that there is no combination of conditions that would reasonably assure her appearance at future court proceedings. *See* 18 U.S.C. § 3142(c). The government has not even alleged, and there is no evidence to suggest, that Mrs. Zamora would be a danger to the community if released. She is presumed innocent throughout these proceedings. 18 U.S.C. § 3142(j). The factors to be considered include the following (see 18 U.S.C. § 3142(g)):

**1. Nature and circumstances of the offense charged**

Mrs. Zamora is charged by criminal complaint with a single count of conspiracy to commit health care fraud. The complaint seems to allege that her husband, Dr. Zamora, a practicing physician, committed health care fraud by misdiagnosing patients. As explained by the agent's testimony at the detention hearing, Mrs. Zamora was not a practicing physician at her husband's clinic and did not see, diagnose, or treat patients. Nevertheless, the complaint seems to allege that she was complicit in the alleged conspiracy by somehow altering or falsifying records in response to grand jury subpoenas her husband's clinic received in 2017.

**2. The weight (or lack thereof) of the evidence against Mrs. Zamora**

The evidence against Mrs. Zamora can, at best, charitably be described at circumstantial: that as Dr. Zamora's wife and an employee at his clinics (albeit one primarily responsible for property management and equipment purchases and not involved in the practice of medicine, according to the agent's testimony) she must have somehow known about her husband's alleged fraud and somehow been complicit in it. However, there is not a single piece of direct evidence that has even been proffered against her. The complaint lists several former employees of the clinic who were interviewed by the FBI, but not a single one claims to have ever witnessed Mrs. Zamora do anything illegal—specifically to have ever falsified a record or told someone to do so.

Only one former employee, Reymundo Moreno (identified as a medical assistant and employee #3 in the complaint) even alleged to believe that Mrs. Zamora had somehow been involved in falsifying records, but as explained by the agent during the detention hearing, that belief was solely based on Mr. Moreno claiming to have seen Mrs. Zamora talking with a lab technician one time someday after the grand jury subpoenas were received, without knowing what

they were talking about or what, if anything, they were reviewing. The agent even acknowledged that, for all he knew, they could have been talking about the weather.

Moreover, the agent explained that when first interviewed by the FBI, Mr. Moreno did not even allege any wrongdoing by Mrs. Zamora. It was only after Mr. Moreno was fired that he duped the FBI with a yarn about how he believed that other employees (not him) were falsifying records and that he brought that concern to the Zamoras, received no response from them, and was subsequently fired by Dr. Zamora. It was not until Mr. Moreno testified before the grand jury that he admitted that he was the one who falsified records, after he could not find records that were missing from the file, by inserting old X-rays in the file. Even as his story changed, at no time did Mr. Moreno—or anyone else, for that matter—claim that they were instructed by Mrs. Zamora (or even Dr. Zamora) to falsify records or that they ever witnessed her do so, or do anything else illegal for that matter.

Even the evidence against her husband appears weak. While the government has made hyperbolic claims as to the loss amount in the press, at Mrs. Zamora's detention hearing the testifying agent could only identify three patients that were allegedly misdiagnosed. The agent's claim of misdiagnoses seemed to be based on those patients having seen by another physician years or at least months later, and the second physician (without reviewing the original charts and records) giving them a slightly different diagnosis at the time (e.g., psoriatic arthritis vs. rheumatoid arthritis) or finding that after extensive treatment by Dr. Zamora the patient was no longer showing symptoms of rheumatoid arthritis. Again, there was no evidence of Mrs. Zamora's involvement in any alleged misdiagnosis.

The government also argued that an agreed order in 2009 between Dr. Zamora and the medical board somehow evidenced fraud by Mrs. Zamora's husband (again with no evidence of her involvement in that), but the government failed to inform the magistrate court that Dr. Zamora

was subsequently vindicated by a "fully favorable" decision in January 2014 by the Centers for Medicare & Medicaid Services (CMS) after an independent medical examiner reviewed the file and CMS determined that provided services were medically necessary and any found not to be necessary were of no fault of Dr. Zamora.

**3. The history and characteristics of Mrs. Zamora**

Mrs. Zamora has resided at the same home in Mission, Texas, for two decades. She has strong ties to the community, including three children who are United States citizens. Two of them, both adults, reside on the West Coast. Her fourteen-year-old daughter has resided with her in Mission, Texas, her whole life. With both Mrs. Zamora and her husband detained, that minor daughter is left without a parent to care for her. That daughter is perhaps Mrs. Zamora's strongest tie to the community, as Mrs. Zamora would not flee and abandon her daughter, nor would she take her daughter from the county she has known as her home her whole life.

Mrs. Zamora has no criminal history and no history relating to drug or alcohol abuse.

Even though she was not required to, she attended all but one of the hearings in her husband's case, and was arrested on June 26, 2018, at the courthouse when she arrived to attend her husband's hearing, even though it had been evident since at least early 2017 that she would likely also be arrested as part of her husband's case. Despite no new apparent evidence against her since her husband's arrest in May 2018, the government chose to wait until now to arrest her, secure in the knowledge that she would not flee, but instead would come to the courthouse where agents could arrest her at their convenience. If that does not demonstrate an absence of risk of non-appearance at court, it is hard to imagine what would.

**4. The absence of any danger to any person or the community that would be posed by Mrs. Zamora's release**

The government has not even alleged that Mrs. Zamora would be a danger to the community. If she is not released, though, her daughter, a member of the community, would be irreparably harmed by being left without her parents for an extended period of time. Mrs. Zamora's husband's case has been declared complex, and the government claims the discovery in her case is "voluminous" and in the process of being prepared for production. No discovery has yet been made available in this case (other than some call transcripts produced at the detention hearing), even though the government has no new evidence against her since her husband's arrest and has had months to prepare the discovery in anticipation of her arrest. The government will likely delay discovery and trial as long as possible, especially with both defendants in custody, which will further prejudice Mrs. Zamora and her family, even though she is presumed innocent and is confident that she and her husband will be vindicated at trial.

#### CONCLUSION

There are several conditions and combinations of conditions that can reasonably assure her appearance at future court proceedings. *See, e.g.,* 18 U.S.C. § 3145(c)(1)(B)(i-ix), (xi-xii), (xiv). Accordingly, Mrs. Zamora respectfully requests a prompt hearing on this motion, pursuant to 18 U.S.C. § 3145(a), and that she be released pending trial on reasonable conditions.

Respectfully submitted,

*s/Christopher Sully*
CHRISTOPHER SULLY
Attorney-in-Charge
Counsel for Meisy Angelica Zamora
Southern District of Texas 1119552
Texas State Bar No. 24072377
LAW OFFICE OF CHRIS SULLY
5804 N. 23rd St.
McAllen, TX 78504
Tel.: (956) 413-7271
Fax: (888) 990-1525
csully@sullylaw.com

### CERTIFICATE OF NON-CONSULTATION

U.S. Attorney Andrew Swartz had already requested detention in this case and was therefore not consulted again before filing this motion, as he can be presumed opposed to it.

*s/Christopher Sully*
CHRISTOPHER SULLY

### CERTIFICATE OF SERVICE

On August 7, 2018, this motion was served on Assistant U.S. Attorney Andrew Swartz via ECF.

*s/Christopher Sully*
CHRISTOPHER SULLY