UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
McALLEN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | 7:18-CR-855-S2 |
| MEISY ANGELICA ZAMORA | § | |

**DEFENDANT'S REPLY RE: MOTION TO REVOKE DETENTION ORDER**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, MEISY ANGELICA ZAMORA, Defendant, by and through her undersigned counsel Christopher Sully, and respectfully files this reply to the government's responses/objections to her Motion to Revoke Detention Order.

**AUTHORITY**

The government misstates the legal standards that apply to this motion and to release. The government seeks to place an insurmountable demand on the Court to find conditions that would prevent any attempted flight, but as repeated several times in 18 U.S.C. § 3142(c), the Court merely has to find conditions that "reasonably assure the appearance of the person…." 18 U.S.C. § 3142(c). In revoking a district court's detention order of a Turkish citizen who had obtained a U.S. passport under a false name, the circuit court emphasized that conditions only had to reasonably assure appearance—not eliminate all possibility of escape, which is impossible in any case:

> The magistrate judge and district court referred several times to the notion that if the defendant were to flee, his supervisors could not stop him. That, of course, is true of every defendant released on conditions; it is also not the standard authorized by law for determining whether pretrial detention is appropriate. Section 3142 speaks of conditions that will "reasonably" assure appearance, not guarantee it. *See also* H. REP. NO. 1030, 98th Cong., 2d Sess. 15 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3198 (acknowledging feasibility of conditions even "where there is a substantial risk of flight"). The record here contains more than enough to satisfy the "reasonable" assurance test, and not enough to show by a preponderance

of the evidence that no combination of conditions will assure the defendant's appearance.

*United States v. Xulam*, 318 U.S. App. D.C. 1, 84 F.3d 441, 444 (1996). One of the two cases that the government relies upon dismisses electronic monitoring because it cannot "prevent" flight, but as discussed above, that is not the correct standard.

Despite the government's dismissiveness of electronic monitoring, there are numerous reported cases where courts have found electronic monitoring and/or home restriction/arrest to be sufficient. *See, e.g., United States v. Clark*, 791 F. Supp. 259 (E.D. Wash. 1992), *United States v. Malloy*, 11 F. Supp. 2d 583 (D.N.J. 1998), *United States v. Traitz*, 807 F.2d 322 (3d Cir. 1986), *United States v. Yaming Nina Qi Hanson*, 613 F. Supp. 2d 85 (D.D.C. 2009). This does not even include the numerous unreported cases before this and other courts where such conditions have been sufficient to assure defendants' appearances, even those who were non-citizens. The government cannot offer a single example of anyone who has fled prosecution while on electronic monitoring, and even if the government could cite an example, it would be far outnumbered by the cases where the defendants, even non-citizens living close to the international border, have not fled. Again, the Court's task in considering conditions of release is not to prevent all imaginable possibility of escape, but merely to reasonably assure appearance.

The government also seeks to place the burden on the defense to prove that Mrs. Zamora should be released. However, there is no statutory presumption in favor of detention in this case, like there was in *United States v. Mercedes*, 254 F.3d 433 (2d Cir. 2001), one of the inapposite cases that the government relies upon. Furthermore, in that case, danger to the community was a risk factor, whereas in this case the government does not even allege that there would be danger to the community if Mrs. Zamora were released. Since there is no presumption in favor of detention, the burden is on the government, not Mrs. Zamora, to prove that there is no combination

of conditions that can reasonably assure Mrs. Zamora's presence at future proceedings. Moreover, there is, in effect, a presumption in favor of release or bond that the government has to overcome, as the Eighth Amendment protects Mrs. Zamora against even excessive bail. To deny her bail completely, as the government seeks to do, is to deny her a right she is presumed to have under the Constitution, and it would take much more from the government to overcome that burden and presumption.

The government has repeatedly argued that Mrs. Zamora has failed to present new information to the Court in support of her release since the detention order was issued. While that is not true, the relevant statute for review of a detention order, 18 U.S.C. § 3145(b), gives a defendant an automatic right to appeal a detention order issued by the magistrate to the district court and even to an appellate court, without requiring that the defendant find and present new information. *See* 18 U.S.C. § 3145(b).

One new factor that has arisen since the detention order is the apparent delay in trial for reasons outside of Mrs. Zamora's control. The Court should consider the length of the detention that would result if Mrs. Zamora were not released, especially as she is approaching 90 days in detention and it appears that trial will be delayed further due to factors and recent developments outside her control. The Fifth Circuit has found that extended pre-trial detention can violate due process and should be considered in determining whether release or detention is warranted. *See United States v. Hare*, 873 F.2d 796, 801 (5th Cir. 1989).

While a defendant's citizenship and the possibility of deportation are factors that the Court may consider (and are factors that the government has harped upon in this case), they do not prohibit release. In fact, release has been upheld even when the defendant was an undocumented alien charged with illegal reentry under 8 U.S.C. § 1326. *See United States v. Chavez-Rivas*, 536 F. Supp. 2d 962 (E.D. Wis. 2008). The court still found that positive factors—such as that the

defendant has resided in the U.S. for at least a decade and had citizen children who were unlikely to accompany him if he chose to flee—allowed for release under conditions, which included electronic monitoring and a substantial ($10,000) bond deposit. *Id.* In comparison, Mrs. Zamora has lawfully resided in the U.S. for two decades, and all of her children are citizens living in the U.S. who would be unlikely to accompany her if she chose to flee, thus making it quite unlikely that she would flee.

Another factor the Court may consider is whether or not a defendant has taken advantage of previous opportunities to flee. In another case where the district court vacated a magistrate's detention order, the district court noted that the "Defendant has not seized upon previous opportunities to flee to avoid prosecution or incarceration, and the opportunities have been many." *United States v. LaLonde*, 246 F. Supp. 2d 873, 875 (S.D. Ohio 2003).

## Argument

Similarly, in the months between when her husband was arrested and when she was charged and arrested, Mrs. Zamora had ample opportunity to flee, but chose not to do so. She could have simply stayed in Mexico on either of her trips if she had any intent to flee, but she did not. In the numerous recordings and other evidence that the government has, there is not a single statement by Mrs. Zamora expressing even the thought of fleeing. The fact that she returned each time and even came to court several times, including when she was arrested, demonstrates that she had and has no intent to flee. She came to court the day she was arrested without being required to and without any conditions such as electronic monitoring to force her to. In light of this, the government cannot persuasively argue that she is likely to flee, even with the addition of conditions such as electronic monitoring and home detention.

There are conditions, including but not limited to electronic monitoring and home detention or incarceration, that would reasonably assure Mrs. Zamora's appearance. The defense has submitted a proposed order (D.E. 229) listing several possible conditions of release the Court may consider. The Court is, of course, free to remove, add, or modify any of these suggested conditions as it sees fit, including but not limited to bond and deposit amounts.

One of the main conditions available to the Court is electronic monitoring in conjunction with curfew, home detention, or home incarceration. Home detention seems to be the condition that the government discusses in its objections where it complains that under this condition Mrs. Zamora would still be free to leave her residence for certain reasons, such as to attend church or meet with her attorney, as long as those trips were scheduled and approved in advance with pretrial services. However, if the Court found those restrictions too liberal, the Court could order home incarceration, where Mrs. Zamora would be restricted to 24-hour-a-day lock-down except for medical necessities and court appearances. While the defense feels that the restriction of home incarceration is greater than necessary in this case, it is still preferable to detention and within the Court's discretion to order. (If the Court were to find traditional home detention to be too lax, there is yet another level of assurance potentially available, that of armed guards (to be approved by the government and paid by the defendant) to enforce the home detention, as contemplated in *United States v. Dreier*, 596 F. Supp. 2d 831, 833-34 (S.D.N.Y. 2009).) More importantly, GPS monitoring (ankle bracelet) in conjunction with home detention or incarceration, and in combination with other available conditions (as suggested in the proposed order) would be sufficient to reasonably assure Mrs. Zamora's appearance as required by the Bail Reform Act.

In dismissing the value of electronic monitoring or home detention, the government not only misstates the applicable law, but also makes several unsupported factual assertions to the Court about monitoring bracelets without any testimony or evidence. For instance, the government

talks about what would happen if a monitoring bracelet were removed while apparently assuming that it is easy to remove it. At least the government acknowledges that pretrial services would be quickly notified if a bracelet were tampered with. But the government complains that it would take too long to get an arrest warrant without recognizing that the vast majority of the defendants before this Court were detained or arrested without warrants. If a defendant were to be found in the process of trying to flee (a separate felony) any law enforcement officer would be able to detain her without having to wait for a warrant.

The government has also alleged, without any evidence, that Mrs. Zamora has significant funds in Mexico that she could use to flee and live comfortably in Mexico for the rest of her life to avoid prosecution. The Court has correctly noted that there would have to be a bank account to pay fees like homeowner's association expenses there. Attached as an exhibit is a current statement of the balance of that debit account, which is the equivalent of about $3,000 dollars—hardly enough to go on the lam for the rest of her life, especially given the exorbitant HOA fees. *See* Ex. 1. If she had much more disposable funds in Mexico than this, the government would have produced that evidence to the Court by now. The government's argument about Mrs. Zamora's residential property in Mexico also ignores how easy it would be to find her if she chose to flee there, which she has not demonstrated any intent of doing.

Moreover, the government's arguments miss the point that Mrs. Zamora does not have the intent to flee, with or without a monitoring bracelet. If she did, she would not have returned to the U.S. and to court on more than one occasion, especially when she did not have a monitoring bracelet then, and without the need for extradition.

The Court should also consider that given the history of this case and the resources that the government continues to devote to it, the government will likely continue to covertly surveil Mrs. Zamora and her residence if she is released, at least as far as she knows, and this is a further

deterrent to flight if she ever were to even think about fleeing. Before Mrs. Zamora was arrested, the government repeatedly surveilled her and her residence. *See* Tr. Of 8/2/18 Testimony at 48-49, 52-53, 61-62. The government's comments about who does or does live at her residence now suggest that the government continues to surveil her residence, even while she is detained. Mrs. Zamora therefore has every reason to believe that the government will continue to surveil her if she is released, and she still has no compelling reason to attempt to flee.

## CONCLUSION

Mrs. Zamora does not have to meet an insurmountable and illegal burden of showing that it would be impossible for her to flee. Rather, the government has the burden, and has failed to meet it, of proving that there is no combination of conditions that can *reasonably* assure her appearance. Mrs. Zamora could have fled if she wanted to, but did not, even when she was not subject to any release conditions, like electronic monitoring or home detention, and she has not demonstrated any intention of fleeing. Therefore, conditions can and should be set that would reasonably assure her continued appearance in court.

Respectfully submitted,

*s/Christopher Sully*
CHRISTOPHER SULLY
Attorney-in-Charge
Counsel for Meisy Angelica Zamora
Southern District of Texas 1119552
Texas State Bar No. 24072377
LAW OFFICE OF CHRIS SULLY
5804 N. 23rd St.
McAllen, TX 78504
Tel.: (956) 413-7271
Fax: (888) 990-1525
csully@sullylaw.com

## CERTIFICATE OF SERVICE

On October 3, 2018, this reply was served on Assistant U.S. Attorney Andrew Swartz and on all counsel of record via ECF.

*s/Christopher Sully*
CHRISTOPHER SULLY
