IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
McALLEN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | Case No.  18-CR-0855-S |
| JORGE ZAMORA-QUEZADA, ) | |
| MEISY ANGELICA ZAMORA, ) | |
| ESTELLA SANTOS NATERA, ) | |
| FELIX RAMOS ) | |
| ) | |
| Defendants. ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANTS'
RENEWED MOTIONS TO RELEASE SEIZED ASSETS**

The United States of America, by and through undersigned counsel, hereby submits this Response to Defendant Meisy Angelica Zamora's ("Defendant") Renewed Motion to Release Seized Assets ("Motion") (Docket No. 353); and Defendant Jorge Zamora-Quezada's Motion to Release Seized Funds and/or Show Cause as to Why Funds should Not be Released (Docket No. 341, *filed under seal*).

Defendants continue to misstate the law, and Defendants continue to fail to meet the threshold requirement of making a financial showing before they can seek a *Monsanto* hearing to challenge probable cause. There are no "changed circumstances" justifying a release of any property subject to forfeiture.

Forfeiture extends to *all* health care fraud proceeds that the Defendants obtained during the 2000-2018 conspiracy. There was previously and still is probable cause to believe that Soledad real property for sale in San Antonio is subject to forfeiture both because it is traceable to proceeds and because it is property involved in money laundering. Money from a sale of the real property is likewise subject to forfeiture and, under *Monsanto*, is not available for paying attorney's fees.

## ALLEGATIONS IN INDICTMENT

The grand jury returned a Superseding Indictment alleging a long-running health care fraud conspiracy that is broader than just misdiagnosed patients, and that specifically includes a widespread pattern of submitting fraudulent claims for medically unnecessary tests and procedures, supported by falsified patient medical records. In addition, the Superseding Indictment alleges that the Defendants conspired to commit money laundering, including concealing criminal proceeds by investing them in real estate.

## ARGUMENT AND AUTHORITIES

The proper legal framework for the Defendants to challenge the restraint of assets is for them to meet the threshold *Jones-Farmer* requirements by:

(1) providing a complete financial statement showing that Defendants have no other funds with which to pay for defense counsel; and then

(2) making a *prima facie* case that an error occurred in the probable cause determination[1] that certain properties would be subject to forfeiture upon conviction.

The Defendants have not made the required financial showing. Furthermore, their allegation that the Soledad real property was purchased with untainted funds is wholly unsupported.

The Defendants also misstate forfeiture law. Forfeiture extends to all proceeds the Defendants obtained as part of the health care fraud scheme for the duration of the conspiracy. *See United States v. Reed*, 908 F.3d 102, 125 (5th Cir. 2018) (requiring defendant to forfeit all proceeds obtained during the 20-year mail fraud scheme). Forfeiture is *not* limited to specifically charged executions of the scheme or to fraudulent billing for patients identified in the indictment.

---

[1] As the Supreme Court noted in *Kaley v. United States*, "This Court has repeatedly declined to require the use of adversarial procedures to make probable cause determinations. Probable cause, we have often told litigants, is not a high bar: It requires only the kind of fair probability on which reasonable and prudent [people,] not legal technicians, act." 571 U.S. 320, 338 (2014) (internal quotations and citations omitted).

I.  **The Fifth Circuit Requires a Full Financial Showing before a Defendant can Seek a *Monsanto* Hearing**

Defendant Meisy Zamora has recycled the briefing in her prior motion (filed in September 2018) and has failed to correct the critical legal misstatement that the United States pointed out in its response (*see* Response, Docket No. 200, which more fully sets forth the applicable law). Defendant again cites a vacated panel opinion (*Holy Land*, 445 F.3d 771) for the incorrect legal proposition that "there must be a pre-restraint hearing in every case" involving restrained assets (Defendant's Renewed Motion at p.3). That opinion was *vacated for rehearing en banc* and a new opinion was issued. *See Holy Land Found. for Relief and Dev.*, 493 F.3d 469 (5th Cir. 2007) (*en banc*) (noting that the U.S. Supreme Court in *Monsanto* had "specifically declined" to address when a hearing might be necessary but had recognized Congressional intent that forfeiture be mandatory and broad in scope).

In the Fifth Circuit, a defendant cannot seek a hearing on restrained assets until *after* the defendant makes a financial showing. *United States v. Fisch*, 851 F.3d 402, 409 (5th Cir. 2017) ("We have favorably cited *Jones*, which requires '[a]s a preliminary matter [that] a defendant ... demonstrate to the court's satisfaction that she has no assets, other than those restrained, with which to retain private counsel and provide for herself and her family.'"). That showing has not been made in this case.

II. **Defendants Fail to Make a *Prima Facie* Case that the Seized Property is not Subject to Forfeiture upon Conviction**

Even if the Defendants were able to make the threshold showing of financial need, they would also need to make a *prima facie* case that an error occurred in the probable cause determination that the seized funds and the real property would be subject to forfeiture upon conviction. *See United States v. Fisch*, 2013 WL 5774876, at *6 (S.D. Tex. Oct. 24, 2013).

The seized funds (which total $488,047.52, not "over a million dollars in bank accounts," Motion at 2) were seized with a federal warrant after a magistrate judge found probable cause to believe the funds were subject to forfeiture.

The 16 parcels of forfeitable real property (of the 19 parcels owned by the Defendants) are listed in the Superseding Indictment as being subject to forfeiture because (1) they were purchased, in whole or in part, with proceeds of the health care fraud; and *also* (2) because they are property involved in the Section 1956(h) money laundering conspiracy charged in Count Ten, including (a) that the defendants engaged in Section 1957 financial transactions with health care fraud proceeds of more than $10,000 (*e.g.,* purchases of real property), and (b) that the defendants concealed the source, location, and origin of health care fraud proceeds "by investing such proceeds in commercial and residential real estate," and creating "the false appearance of legitimate wealth and income by renting the various commercial and residential properties." Superseding Indictment at pp. 12 - 14.

With regard to the pending sale of the Soledad real property,[2] it does not matter for purposes of forfeiture if a forfeitable real property changes form into net sales proceeds. After the sale of real property, the sales proceeds become a substitute *res;* are still subject to forfeiture as property derived from or traceable to property subject to forfeiture; and are still wholly unavailable to be used for attorney's fees. *See* Rule G(7)(b)(iv) of the Supplemental Rules for Admiralty or

---

[2] Defendants claim—with no explanation or evidentiary substantiation—that the Soledad property was purchased by the Zamoras with "untainted funds." Motion at 1-2. In fact, the Soledad property was purchased in 2017 with the proceeds of a $2.5 million Certificate of Deposit ("CD") that the Zamoras bought at the end of May 2013, all during the health care fraud conspiracy. The Zamoras redeemed the CD early, paying a penalty, *the day after a search warrant was executed at the Zamoras' clinic in April 2017*. Subsequently, the Zamoras purchased the Soledad property and another real property on Gardendale in San Antonio, both of which are listed in the Superseding Indictment as being subject to forfeiture.

Maritime Claims and Asset Forfeiture Actions; FED.R.CRIM.P. 32.2(b)(7); *United States v. Monsanto,* 491 U.S. 600 (1989).

Regardless, the Defendants cannot challenge probable cause as to any restrained property unless and until they first meet the threshhold *Jones-Farmer* requirements.

### III.   Civil Injunction Arguments are Irrelevant

Jorge Zamora-Quezada's Motion at 3-4 addresses the civil anti-fraud injunction statute, 18 U.S.C. §1345, in support of his argument that seized funds should be released. Zamora cites *United States v. Brown,* 988 F.2d 658 (6th Cir. 1993), a civil case which occurred before the injunction statute was amended in 1996 to add federal health care fraud offenses. The application of the civil statute is not at issue here, however, as the current case is a criminal matter involving forfeiture, governed by the U.S. Supreme Court's opinion in *Monsanto.* 491 U.S. at 613-14 ("We conclude that there is no exemption from § 853's forfeiture or pretrial restraining order provisions for assets which a defendant wishes to use to retain an attorney.").

Nevertheless, the Government has no quarrel with the proposition that the government in a criminal matter may only restrain property when there is probable cause to believe that the property is subject to forfeiture (*e.g.,* traceable to fraud proceeds, or involved in money laundering). In this case, probable cause clearly exists that the property would be subject to forfeiture upon the Defendants' conviction.

### IV.   Forfeiture Extends to All Health Care Fraud Proceeds Obtained During the Conspiracy Period as Part of the Scheme to Defraud

Simply put, the value or amount of property alleged to be forfeitable in this case has not been "reduced" since the indictment, nor has the probable cause. Assuming Defendants are convicted of a health care fraud conspiracy, forfeiture is available for all of the proceeds of the fraudulent billing scheme, whether or not the individual patients and bills are listed in the

indictment or presented at trial. *See United States v. Reed*, 908 F.3d 102, 125 (5th Cir. 2018) (requiring defendant to forfeit all proceeds obtained during the 20-year mail fraud scheme); *United States v. Jafari,* 663 Fed. Appx. 18, 24 (2d Cir. 2016) (defendant was responsible in forfeiture for the proceeds of heath care fraud billings not directly charged in the indictment, as government established underlying criminal conduct at trial).

Count 1 of the Superseding Indictment charges both Jorge and Meisy Zamora with Conspiracy to Commit Health Care Fraud, which necessarily includes a scheme to defraud.[3] As the Fifth Circuit recently stated,

> Conspiracy to commit health care fraud requires a scheme. 18 U.S.C. § 1349. The scheme in which [the defendants] participated caused losses to both Medicare programs as well as Medicaid. Indeed, the same fraudulent claims resulted in payments from Medicare and Medicaid. It was not improper to include losses to all the government programs victimized as part of the scheme.

*United States v. Sanjar*, 876 F.3d 725, 748 (5th Cir. 2017). Pursuant to 18 U.S.C. § 982(a)(7), forfeiture is available for all property which constitutes or is derived from "gross proceeds traceable" to health care fraud or conspiracy.

In the *Reed* case, the defendant argued that the district court should have only imposed forfeiture for proceeds of mail fraud offenses occurring within the five-year statute of limitations. The Fifth Circuit disagreed, finding that the defendant "had engaged in a continuing scheme over 20 years" and must properly forfeit "all of the proceeds from that scheme." 908 F.3d at 125. As the Court noted,

> [F]orfeiture may be imposed on an amount that goes beyond the counts of conviction, as long as the property was obtained through the same criminal scheme.

---

[3] To convict defendants of wire fraud, "the government had to prove a scheme to defraud, rather than just specific incidents of fraud limited to individual investors"; therefore, "actions pursuant to that scheme are 'conduct underlying the offense of conviction.'" *United States v. Stouffer*, 986 F.2d 916, 928 (5th Cir. 1993). *See also United States v. Pepper*, 51 F.3d 469, 473 (5th Cir. 1995) (holding that restitution includes losses of victims not named in the indictment so long as they were victims of the charged scheme).

> *See United States v. Venturella,* 585 F.3d 1013, 1015–17 (7th Cir. 2009) ("Furthermore, ... forfeiture is not limited solely to the amounts alleged in the count(s) of conviction.... We have also interpreted other statutes authorizing forfeiture to include the total amount gained by the crime or criminal scheme, even for counts on which the defendant was acquitted.").

*Id.* at 125 n.23.

The individual patient cases that will be presented by the government at trial are representative of how Defendants carried out the scheme and conspiracy to defraud, but those are by no means the only patients who were misdiagnosed or subjected to unnecessary tests and procedures. If Defendants are convicted of a health care fraud conspiracy, then all of the Defendants' fraudulent billing pursuant to the scheme to defraud is conduct underlying the conviction, and the government can seek forfeiture and restitution for the proceeds of all fraudulent billing executions which fall within the bounds of the conspiracy (as well as seeking forfeiture for all property involved in money laundering). *See United States v. Chaney*, 964 F.2d 437, 444 (5th Cir. 1992) ("Conspiracy is… a continuing offense and, in accordance with this principle, '[t]he district court had the authority to order restitution for the losses caused by the entire fraud scheme, not merely for the losses caused by the specific acts of fraud proved by the government at trial.'") (citation omitted).

## CONCLUSION

Defendants have not made the threshold financial showing necessary for them to seek a *Monsanto* hearing. Furthermore, there is probable cause to believe that the seized funds and the real property listed in the indictment constitute or are derived from gross proceeds traceable to the health care fraud conspiracy alleged in Count 1. Finally, the real property is almost by definition property involved in the money laundering conspiracy alleged in Count 10 of the Superseding Indictment. The property is subject to forfeiture and cannot be used to pay attorney's fees.

7

The Government respectfully requests that the Court deny the Defendants' motions to release seized assets (Docket Nos. 341 and 353).

Respectfully submitted,

    Joseph S. Beemsterboer
    Deputy Chief, Health Care Fraud Unit

    /s Kevin Lowell
    Kevin Lowell
    Leslie S. Garthwaite
    Trial Attorneys
    United States Department of Justice
    Criminal Division Fraud Section
    1400 New York Avenue, N.W.
    Washington D.C. 20005

    RYAN K. PATRICK
    UNTIED STATES ATTORNEY

    /s Andrew R. Swartz
    Assistant United States Attorney
    U.S. Attorney's Office, SDTX
    1701 W. Highway 83, #600
    McAllen, TX 78501

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this day of July 10, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system and/or provided an electronic copy to the defendants' counsel of record via email.

    /s Andrew R. Swartz
    Assistant United States Attorney
    U.S. Attorney's Office, SDTX
    1701 W. Highway 83, #600
    McAllen, TX 78501