UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
McALLEN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | 7:18-CR-00855-2 |
| | § | |
| MEISY ANGELICA ZAMORA | § | |

**DEFENDANT'S MOTION TO DISMISS FOR *BRADY/GIGLIO* VIOLATIONS**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Defendant, MEISY ZAMORA, by and through her attorney Christopher Sully, and respectfully files this Motion to Dismiss for *Brady/Giglio* Violations.

## BACKGROUND

After the pretrial motions deadline, the government produced an additional nearly 4 million pages of documents to the defense, most of which were documents that were in existence and in the government's possession before Mrs. Zamora was arrested, adding to the already voluminous discovery in this case. These millions of pages of documents were not indexed or produced in a manner that defense counsel could reasonably review in an attempt to identify favorable evidence and prepare for trial, let alone to adequately identify any unfavorable evidence. Despite the defense's requests, the government has not agreed to identify potentially exculpatory or mitigating evidence contained in this voluminous discovery, much of which contains seemingly irrelevant information, such as summaries of mundane household expenses at a home-improvement store.

Here, the government has dumped millions of pages of documents, without identifying *Brady* or *Giglio* material, on an individual defendant, who has remained in custody since the beginning of her case, represented by a sole practitioner with limited resources. *See United States v. Hsia,* 24 F. Supp. 2d 14, 29-30 (D.D.C. 1998) *rvs'd in part on other grounds*, 176 F.3d 517, 336

U.S. App. D.C. 91 (D.C. Cir. 1999) (defense cannot be expected to find *Brady* material in haystack of 600,000 documents, compared to millions here). On the other side is the government and its formidable resources, at least a half-dozen prosecutors, and an investigation spanning two decades and seizing much of Mrs. Zamora's assets.

Despite the government's duty to identify *Brady* and *Giglio* material in its file, it has not done so, or instead has buried that material in a haystack of millions of pages of documents, which have been produced in a piecemeal fashion over the year that this case has been pending. In addition, the government refuses to give specificity to its vague allegations against Mrs. Zamora, and limits the defense's ability to search through the voluminous discovery by not providing it in an indexed, searchable, or sufficiently usable format. This is made worse by the apparent padding of the already voluminous discovery with superfluous information.

The defense's (not just Mrs. Zamora's counsel, but also counsel for codefendants, especially those for Dr. Jorge Zamora-Quezada) efforts to ask the government to identify potentially exculpatory or mitigating information in the mountain of discovery have been largely brushed off by the government, sometimes with dismissive comments. For example, in response to codefendant's counsel's question as to whether the government's "previously designated expert, Dr. Calvin Brown, did not disclose any information that may have been favorable to Dr. Zamora" and requesting other *Brady* information, the government simply responded that it is "aware of [its] obligation with respect to Brady, Gigilio [sic], etc.[,] and will provide that information, if any exists, consistent with our obligations." Similarly, a question regarding the identification of the 25 patients from the thousands of patients that Dr. Zamora saw at the clinic and the sampling method, if any, used, which could lead to the identification of patients for whom the government identified

that no fraud occurred, the government responded, "that is an area for cross examination, not pre-trial discovery."

## AUTHORITY

> [A]s well established by case law, the *prosecution* has the duty to *affirmatively* scour those records of the agencies considered the 'government' for purposes of the criminal case in order to determine and acquire those materials which would be considered *Brady* exculpatory and *Giglio* impeaching.

*United States v. Salyer*, 2010 U.S. Dist. LEXIS 77617, at *10 (E.D. Cal. Aug. 2, 2010) (emphasis in original), *citing Kyles v. Whitley*, 514 U.S. 419, 437, 115 S.Ct. 1555, 131 L. Ed. 2d 490 (1995); *United States v. Price*, 566 F.3d 900, 908-909 (9th Cir. 2009).

> "[T]he government cannot meet its *Brady* obligations by providing [the defendant] with access to 600,000 documents and then claiming that she should have been able to find the exculpatory information in the haystack." [citation omitted]. … "[A]t some point (long since passed in this case) a duty to disclose may be unfulfilled by disclosing too much; at some point, "disclosure," in order to be meaningful, requires "identification" as well."

*Id.* at *19-20, *quoting United States v. Hsia,* 24 F. Supp. 2d 14, 29-30 (D.D.C. 1998) *rvs'd in part on other grounds*, 176 F.3d 517, 336 U.S. App. D.C. 91 (D.C. Cir. 1999).

"At any time the [C]ourt may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief…." FED. R. CR. P. 16(d)(1). The goal of the discovery rules is "to provide for the just determination of every criminal proceeding, to secure simplicity in procedure and fairness in administration, and to eliminate unjustifiable expense and delay." FED. R. CRIM. P. 2. "The Court may order the government's manner of production to be in a format usable by the defendant." *United States v. Meredith*, No. 3:12-CR-00143-CRS, 2015 U.S. Dist. LEXIS 126487, at *3 (W.D. Ky. Sep. 21, 2015), *citing United States v. Warshak*, 631 F.3d 266, 296 (6th Cir. 2010).

"[T]he Court may dismiss an indictment with prejudice due to a combination of the government producing voluminous, tainted, and incomplete discovery." *Id.* at *3-4, *citing United*

*States v. Graham*, No. 1:05-CR-45, 2008 U.S. Dist. LEXIS 122113, 2008 WL 2098044, at *5 (S.D. Ohio May 16, 2008).

> [T]he Court may find the Government abdicated its duty under *Brady* if (1) the Government pads discovery with irrelevant documents, (2) makes access to discovery 'unduly onerous,' or (3) deliberately conceals exculpatory evidence in voluminous discovery.

*Id.* at *7, *citing United States v. Warshak*, 631 F.3d 266, 298 (6th Cir. 2010).

> [E]vidence that the government 'padded' an open file with pointless or superfluous information to frustrate a defendant's review of the file might raise serious *Brady* issues. Creating a voluminous file that is unduly onerous to access might raise similar concerns. And it should go without saying that the government may not hide *Brady* material of which it is actually aware in a huge open file in the hope that the defendant will never find it. These scenarios would indicate that the government was acting in bad faith in performing its obligations under *Brady*.

*United States v. Simpson*, No. 3:09-CR-249-D(06), 2011 U.S. Dist. LEXIS 28756, at *29 n.8 (N.D. Tex. Mar. 21, 2011). Moreover, "as is well established by the Supreme Court, a *Brady* violation does not depend on the good or bad faith of the prosecution." *United States v. Salyer*, 2010 U.S. Dist. LEXIS 77617, at *22-23 (E.D. Cal. Aug. 2, 2010), *citing District Atty's Office, etc. v. Osborne*, _ U.S. _, 129 S.Ct. 2308, 2335, 174 L. Ed. 2d 38 (2009).

The resources of the defense, or lack thereof, can be considered in weighing whether the government has provided the discovery in a usable format. *See, e.g., United States v. Salyer*, No. S-10-0061 LKK [GGH], 2011 U.S. Dist. LEXIS 41763, at *22-23 (E.D. Cal. Apr. 18, 2011) (noting that "[t]his is not the case where an individual criminal defendant in a white collar corporate case has corporation behind him" but that, unlike here, the defendant "has been out of custody and aiding the defense for sometime."). (Here Mrs. Zamora has remained in custody since the beginning of her case and is represented by a sole practitioner.)

## ARGUMENT

As detailed in Mrs. Zamora's Motion for Bill of Particulars, the government has failed to specify what, exactly, are its allegations against her and what inculpatory evidence it may have. *See* D.E. 388. Of greater importance, the government has failed to identify any potentially exculpatory or mitigating *Brady/Giglio* evidence that may exist, despite its affirmative duty to search its agencies' files for that information, and despite repeated requests from the defense. Instead, the government has periodically spewed millions of pages of non-indexed, non-searchable documents on the defense.

The fact that the government has not identified any *Brady/Giglio* information suggests at least three possibilities:

1. The government has not met its obligation to search for and identify any such information in its agencies' files—a highly likely scenario;
2. The government has searched for such information, but has found none because none exists—a highly unlikely scenario; or
3. The government has identified such information, but has buried it in millions of pages of non-indexed and often superfluous documents, where it is unlikely to be found by the defense—another likely scenario.

Either way, the government has failed to meet its discovery obligations. Defense counsel cannot be expected to simply find any *Brady/Giglio* material buried in the haystack. The government cannot wash its hands of its duties by claiming that it has produced an open file to the defense and that the defense is solely responsible for searching for any *Brady/Giglio* information, as over-disclosure can be tantamount to non-disclosure, much like a needle in a haystack.

## CONCLUSION

As a result, the government has denied Mrs. Zamora a fair and prompt resolution to her case, and the case against her should therefore be dismissed with prejudice. Alternatively, the government should be ordered to produce the documents in a usable, indexed, searchable format;

to identify not only the documents it may use at trial, but also all documents containing potentially exculpatory, mitigating, or impeachment *Brady/Giglio* evidence; and to pay for the costs for the defense to have adequate e-discovery service providers perform an initial review and preparation of the documents—something the government should have done long ago.

Respectfully submitted,

*s/Christopher Sully*
CHRISTOPHER SULLY
Attorney-in-Charge
Counsel for Meisy Angelica Zamora
Southern District of Texas 1119552
Texas State Bar No. 24072377
LAW OFFICE OF CHRIS SULLY
5804 N. 23rd St.
McAllen, TX 78504
Tel.: (956) 413-7271
Fax: (888) 990-1525
csully@sullylaw.com

### CERTIFICATE OF CONSULTATION

Assistant U.S. Attorney Adrienne Frazior is opposed to this motion.

*s/Christopher Sully*
CHRISTOPHER SULLY

### CERTIFICATE OF SERVICE

On August 20, 2019, this motion was served on all counsel of record via ECF.

*s/Christopher Sully*
CHRISTOPHER SULLY