UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
McALLEN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | 7:18-CR-855-S2 |
| | § | |
| MEISY ANGELICA ZAMORA | § | |

**DEFENDANT'S MOTION FOR ADDITIONAL DISCLOSURES-**

Defendant MEISY ANGELICA ZAMORA, through her attorney Christopher Sully, hereby moves this Court to order the United States to provide additional disclosure as follows:

- A written summary of the expert *opinions* that it intends to elicit at trial, as required by Rule 16(a)(1)(G), rather than just a list of topics;

- Medicare claims data regarding the prevalence of rheumatoid arthritis among the patients seen by the government's expert witnesses;

- Additional information about the government experts' review of patient files;

- Confirmation that no government witnesses have filed a *qui tam* lawsuit against Dr. Zamora that is under seal; and

- Social Security disability files for those patients whom the government plans to call at trial.

**I.     The Proposed Experts' Opinions, Not Just Topics**

Under Federal Rule of Criminal Procedure 16(a)(1)(G), the government must provide a "written summary" of any expert testimony that the government intends to use under Federal Rules of Evidence 702, 703 or 705 in its case-in-chief. That summary "must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications."

Here, the government has provided defendant with the names of its expert witnesses and their qualifications, but has not provided the "opinions" themselves that the government intends to elicit as well as the witnesses' "bases and reasons for those opinions." In particular, the

1

government's disclosure about the testimony of an outside rheumatologist, Calvin Brown, who was recently replaced by Eric Ruderman, has been insufficient.

In particular, on August 18, 2018, the government disclosed, among other things, that Dr. Calvin Brown, a rheumatologist in Chicago, Illinois, would testify about "standards of care in rheumatology including: the standard of care for physical evaluation and testing for diagnosis of rheumatoid arthritis, other forms of arthritis and related conditions, including the different methods used to diagnose and treat different types of arthritis," the "steps rheumatologists undertake to treat diseases in the area of rheumatology," "his observations of patients who have suffered from Rheumatoid Arthritis, including the prevalence of the disease in the general population, manifestation of symptoms, and other indicators in patients who have, and who do not have, Rheumatoid Arthritis."  On July 29, 2019, the government notified defendants that Dr. Eric Ruderman would be called instead of Dr. Brown, and "hereby incorporates its prior notice and disclosures about Dr. Brown for the subjects of Dr. Ruderman's testimony."

The government's disclosure provides the *topics* that Dr. Brown or Dr. Ruderman might testify about, but Rule 16 requires much more - namely, disclosure of the actual *opinions* that an expert will testify to.  *See United States v. Burke*, 2015 U.S. Dist. LEXIS 68808 (N. D. Texas May 28, 2015) ("a list of topics or the general subject matter about which an expert may testify is not sufficient to comply with Rule 16(a)(1)(G)"), *United States v. White*, 492 F.3d 380, 406-07 (6th Cir. 2007) (finding that the government failed to comply with Rule 16's "minimal" notice requirements by not describing the opinions to be elicited), *United States v. Duvall*, 272 F.3d 825, 828 (7th Cir. 2001) ("[T]he government's notice did not adequately summarize or describe [the expert's] trial testimony.  The Rule requires a summary of the expected testimony, not a list of

2

topics. The government's notice provided a list of the general subject matters to be covered, but did not identify what opinion the expert would offer on those subjects").

In particular, defense counsel for Dr. Zamora asked the government on September 3, 2019 for disclosure about Dr. Brown or Dr. Ruderman's opinions specifically regarding the "prevalence of the disease in the general population" topic. The government responded on September 6 by stating that it had "fulfilled our notice requirements." This is simply incorrect under Rule 16.

Given the government's insufficient disclosure, the government should be ordered to specify the actual *opinions* that Dr. Brown, Dr. Ruderman, and all expert witnesses are expected to testify, rather than leaving the defendants guessing as to what these experts might say on the *topics* that the government has disclosed. Moreover, to the extent that the government seeks to elicit expert opinions at trial that have not been sufficiently disclosed prior to the witness's testimony, the Court should limit or bar such testimony.

## II.      Claims Data Regarding Prevalence of Rheumatoid Arthritis

To the extent that the government does intend to elicit expert testimony about the "prevalence" of rheumatoid arthritis, the government should also be ordered to provide Medicare claims data for Dr. Brown, Dr. Ruderman, and any other witness who may be asked to provide such an opinion. The government has possession of such data and has made some analysis of this data publicly available via the Medicare website. This information would be relevant to determining whether any expert witness is qualified to offer a useful opinion on this topic. This case is not about whether Dr. Zamora has more patients with rheumatoid arthritis than some doctor based in Chicago, especially since Dr. Zamora's patient population appears to be very different than Dr. Brown's and Dr. Ruderman's. Medicare data that is publicly available online shows that Dr. Zamora's Medicare patient population in 2015 was much larger than Dr. Brown's and Dr.

Ruderman's (about 1,515 Medicare patients compared to about 451 and 471), and that Dr. Zamora's Medicare patient population is much more heavily comprised of Hispanic beneficiaries (88.6% compared to 9.3% and 8.5%). Given these differences, it is unclear whether Dr. Brown's or Dr. Ruderman's unknown opinion about the "general population" would be helpful in determining any issue relevant to the defendant's practice here in southern Texas.

Similarly, to the extent that the government elicits expert testimony about the "prevalence" of rheumatoid arthritis in the "general population," the government should also be ordered to provide Medicare claims data or credible analyses of such data for southern Texas and/or for the Texas-area doctors whom the government plans to call. If such data shows similar rates of rheumatoid arthritis to Dr. Zamora's patient's, that would be exculpatory information that the defendants are entitled to. Notably, Medicare data that is publicly available online shows that the percentage of Dr. Zamora's Medicare patients with either rheumatoid arthritis or osteoarthritis is the same as or similar to the percentage of several of the government's expert witnesses.

### III. Information about Experts' Reviews of Patient Files

Through its expert disclosures, the government has identified 11 patients who were referenced in the indictment and whom Dr. Brown or Dr. Ruderman may testify about: Patients ADJ, AM, BM, CJ, EE, FH, GH, JH, KW, MP and PT. However, the government has provided *no* information about Dr. Brown's or Dr. Ruderman's opinions about the other patients who were referenced in the indictment, including four who are the subjects of specific health-care fraud counts (Patients EP, SC, ML, and MB). The government's recent witness list also leaves out 10 of the patients who are referenced in the indictment, including two who are the subjects of specific health-care fraud counts (Patients EP and SC).

Defendant is left to wonder if the government is withholding *Brady* information regarding these patients. If Dr. Brown or Dr. Ruderman reviewed the files for these patients or any other patients and gave opinions that do not fit the government's theory of the case, then defendant is entitled to that information as potentially exculpatory information whether or not the government intends to elicit such opinions. If Dr. Brown or Dr. Ruderman were asked only to review the files for only 11 patients, then defendant is entitled to that information to the extent that it shows a sloppy investigation and to the extent that it raises questions as to why the government did not want to have other files reviewed.

Accordingly, defendant asks the Court to order the government to provide the required information about Dr. Brown and Dr. Ruderman's review of all patients, including but not limited to all those whom the government intends to reference specifically during trial.

## IV. Any Qui Tam Lawsuits Filed by Government Witnesses

On September 7, 2019, Dr. Zamora's counsel made what should have been a simple, easy request to the government, asking for confirmation that none of the witnesses on the government's witness list had filed any *qui tam* lawsuits. The government responded on September 9 as follows: "For Qui Tam filings, if you have credible information that a specific individual has filed a qui tam, please let me know. Otherwise, I will not be seeking out this information for you."

As the government is surely aware, *qui tam* lawsuits are filed under seal and are not served on defendants until ordered by a court. *See* Title 31, United States Code, Section 3730(b)(2). Accordingly, defendant has no way of knowing whether any one has filed a *qui tam* lawsuit under seal against Dr. Zamora because any such lawsuit would be under seal. This knowledge is uniquely in the possession of the government, as all such lawsuits are served on the government. Defendant's request could be fulfilled by the government here simply by checking some docket or

database maintained by the U.S. Department of Justice's Civil Division or the civil section of the U.S. Attorney's Office for the Southern District of Texas. The government's refusal to simply check its own files on this point makes no sense.

Defendant should not have to wonder if any of the government's witnesses have a financial incentive to help the government succeed, and thus a bias that could be the subject of cross-examination. Accordingly, the government should be ordered to provide confirmation that no witnesses have filed a *qui tam* lawsuit, or at least assurances that it would have disclosed such information if one or more had.

## V.     Social Security Disability Files for Testifying Patients

On September 7, 2019, Dr. Zamora's counsel asked the government if it had Social Security disability files for any patients that the government intends to call, including Patient CJ, Patient MP, and Patient MB. Dr. Zamora's counsel asked because such files "often contain statements by the patient about their health condition that could constitute 3500 material" and can "contain medical records and evaluations that could be relevant in this matter." The government responded on September 9, 2019 that "SSA files do not constitute Jenks in this case."

Under 20 CFR 401.180, a federal district court can issue an order commanding the Social Security Administration to disclose information if "disclosure of the information is necessary to ensure that an individual who is accused of criminal activity receives due process of law in a criminal proceeding under the jurisdiction of the judicial branch of the Federal government."

Here, the government is calling multiple individuals who have applied for and/or received disability benefits during or before the time periods that they were treated by Dr. Zamora, as shown by notes in the patients' medical records kept by Dr. Zamora. The available records provided in discovery thus far indicate that at least one patient applied for disability benefits for multiple

conditions specifically including rheumatoid arthritis. In applying for disability benefits, the patients would have provided statements about their health to the Social Security Administration, and the patients likely were evaluated by an independent physician. If the patients testify in this case about their medical conditions at the time that they were seen by Dr. Zamora, then statements that they made in connection with their Social Security disability benefits would (a) "relate to the subject matter of the testimony of the witness" and (b) be in the government's possession, and thus must be produced under 18 U.S.C. § 3500(b). Furthermore, any findings by an independent examiner or the Social Security Administration that the patients were entitled to disability benefits because of their rheumatoid arthritis would be exculpatory information that should be disclosed.

The government's position on the disability files ignores the procedures set forth in Title 18, United States Code, Section 3500. Under Section 3500(c), if the government does not believe that the patients' Social Security disability files do not contain 3500 material, then the government should present the files to the Court for *in camera* inspection. *See United States v. Rivera Pedin*, 861 F.2d 1522, 1527 (11th Cir. 1988) (finding that the prosecutor "exceeded his role when he unilaterally decided which pages of [a witness's diary] met the Jencks Act requirement" and stating that it was "impermissible for a trial judge, in reviewing Jencks Act material, to refuse to examine all of the material, and thereby abdicate his responsibility to the prosecutor"). Furthermore, if the government refuses to provide the files to defendant and refuses to provide them for the Court's inspection, Section 3500(d) requires that the witnesses' testimony be stricken.

Accordingly, defendant requests that the Court enter an order either directing the Social Security Administration to provide the disability files for all patients whom the government intends to call in this case, or barring testimony by or regarding those patients.

## CONCLUSION

Given the seriousness of the charges in this case and the aggressive positions that the government has taken, the government should be providing discovery with an eye towards ensuring a fair trial rather than rejecting defendant's requests in a knee-jerk fashion. The government should be ordered to provide the information requested herein.

Respectfully submitted,

*s/Christopher Sully*
CHRISTOPHER SULLY
Attorney-in-Charge
Counsel for Meisy Angelica Zamora
Southern District of Texas 1119552
Texas State Bar No. 24072377
LAW OFFICE OF CHRIS SULLY
5804 N. 23rd St.
McAllen, TX 78504
Tel.: (956) 413-7271
Fax: (888) 990-1525
csully@sullylaw.com

### CERTIFICATE OF CONSULTATION

Assistant U.S. Attorney Adrienne Frazior is opposed to this motion.

*s/Christopher Sully*
CHRISTOPHER SULLY

### CERTIFICATE OF SERVICE

On September 14, 2019, this motion was served on all counsel of record via ECF.

*s/Christopher Sully*
CHRISTOPHER SULLY